**Keith Tyrone MOONE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–86–528–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 16, 1987.

Craig A. Washington, Houston, for appellant.

John B. Holmes, Jr., Linda A. West, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for driving while intoxicated. Appellant was found guilty by a jury and his punishment was assessed at 730 days in jail, probated, and a fine of $2000.00. We affirm.

Appellant was involved in a two vehicle accident during the early morning hours of August 13, 1985. The driver of the other

automobile was pronounced dead at the scene and Appellant was taken by ambulance to Cypress-Fairbanks Medical Center. While there, he consented to giving a blood specimen to determine its alcohol content. This specimen was tested at the Department of Public Safety Crime Laboratory and was found to contain an alcohol concentration of .12 grams per one hundred milliliters of blood.

Appellant asserts three points of error. In his first point of error, Appellant contends that the trial court erred in admitting evidence of the blood alcohol specimen because the State did not conclusively establish the chain of custody of the specimen. In order for the results of a blood test to be admissible in evidence, a proper chain of custody of the blood sample that was drawn from the accused and later tested must be established. *Brown v. State,* 156 Tex.Crim.R. 144, 240 S.W.2d 310, 311 (Tex.Crim.App.1951); *Lynch v. State,* 687 S.W.2d 76, 77–78 (Tex.App.—Amarillo 1985, pet. ref'd).

The record reflects that while Appellant was at Cypress-Fairbanks Medical Center he received the statutory DWI warning and signed a form consenting to the taking of a blood specimen. Deputy Michael Sieck, one of the officers investigating the accident, testified that Nurse Reed drew some of Appellant's blood and placed it in a glass vial held by the Deputy. Deputy Sieck stated that the vial never left his possession until he deposited it in the DPS lockbox. Further, this was the only blood sample he deposited in the lockbox that night. He testified that he placed a seal over the top of the glass vial on which he wrote the name of the nurse, the time, his own name and other identifying information. Deputy Sieck then personally typed a "submission form" which listed the type of sample, a request for a blood-alcohol test, the date, the officer's name, Appellant's name, and the name of the accident victim. The submission form and the sealed glass vial were then placed in a green cardboard tube mailer. The green tube was sealed and marked with the officer's name, address, and the word "Houston." At trial, Deputy

Sieck positively identified the submission form and the green tube. However, because the seal had been removed, he was not able to positively identify the glass sample vial offered into evidence at trial as the same one he placed in the green tube. He explained that it was necessary for the DPS chemist to break the seal in order to open the vial and test the contents.

Mr. Mike McGeehon, a chemist for the DPS Crime Laboratory, testified that he retrieved the sealed green tube from the DPS lockbox on August 20, 1985, marked it with the lab number and placed his initials on it. He took the green tube to the lab, opened it and removed the submission form. He did not remove the glass vial. He then completed an evidence record sheet which he marked with the date, his initials and the lab number, resealed the tube and placed it in the lab's refrigerator. The same lab number was placed on the evidence record sheet, submission form and the green tube. The submission form was then attached to the evidence record sheet and both were later placed in a file folder bearing the same lab number.

Mr. Lou Haby, also a DPS chemist, testified that he removed the resealed green tube from the lab refrigerator. He positively identified the glass vial introduced into evidence as the one he removed from the green tube. He explained that he placed his initials and the lab number from the green tube and lab forms on the glass vial when he removed the vial from the tube. He then testified that he analyzed the blood sample contained in the vial and determined that the alcohol content was .12 grams of alcohol per one hundred milliliters of blood.

Mr. David Rossi, a deputy in the Harris County Sheriff's Department, testified that he picked up the green tube containing the blood sample from the DPS laboratory after it had been analyzed. He verified the case number when he received the sample, logged it in the record book, placed it in a box and stored it in the property room until the date of the trial. He personally retrieved the sample and brought it to the courtroom.

■ All of these items of evidence bore the same lab number and were handled in a methodical manner. There is no evidence that the sample was tampered with or misplaced at any time. In the event it was error to allow the *glass vial* to be introduced into evidence, we hold such error to be harmless. The chemist's testimony regarding the *results* of the blood-alcohol test on Appellant's blood specimen is the only evidence that could have harmed Appellant. We hold that the chain of custody of the *blood sample* was sufficiently proven to allow the admission of the blood-alcohol test results into evidence. *See Keenan v. State*, 700 S.W.2d 12 (Tex.App.—Amarillo 1985, no pet.); *Jackson v. State*, 640 S.W.2d 323 (Tex.App.—San Antonio 1982, pet. ref'd). Appellant's first point of error is overruled.

■ In his second point of error, Appellant attacks the trial court's inclusion of the statutory definition of intoxication in its charge to the jury. The essence of Appellant's argument is that the new DWI statute, Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2) (Vernon Supp.1987), by permitting a conviction based on proof that the defendant had an alcohol concentration of at least 0.10 or that he had lost the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, creates an unconstitutional "conclusive irrebuttable presumption" of intoxication. Appellant asserts that this presumption constitutes an impermissible encroachment upon the province of the jury.

The Court of Criminal Appeals recently rejected a similar argument in *Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986). That court found that the legislature had merely redefined the offense of driving under the influence so that " 'intoxication' now can consist of an alcohol concentration of 0.10% or more ... and ... made an alcohol concentration of 0.10% or more an *element* of the offense." *Forte v. State*, 707 S.W.2d at 94. Certainly, this analysis applies equally to the alternative definition of intoxication, "not having the normal use of mental or physical faculties by reason of the introduction of alcohol ... into the body." The Court of Criminal Appeals then concluded that the statute does not in any way encourage the jury to ignore defensive evidence on the issue of intoxication and held the argument that art. 6701*l*–1(a)(2)(B) creates a mandatory conclusive presumption to be without merit. *Forte v. State*, 707 S.W.2d at 95. Further, the court noted that the legislature in redefining the intoxication element of the offense had "merely invoked its power to define criminal conduct within constitutional limits." *Id.* We hold that Article 6701*l*–1(a)(2) is constitutional and does not require a mandatory conclusive presumption on the issue of intoxication. Therefore, we overrule Appellant's second point of error.

In his final point of error, Appellant contends that the trial court erred in denying his motion to dismiss the information for violation of the Speedy Trial Act.

The Speedy Trial Act, Tex.Code Crim. Proc.Ann. art. 32A.02 (Vernon Supp.1987), provides in pertinent part that:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

. . . . .

(2) 90 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days;

. . . . .

Appellant asserts that he was arrested on the date of the accident, August 13, 1985. However, there is simply no evidence in the record to support this contention. Officer Sieck testified that he did not arrest Appellant until the results of the blood-alcohol test were sent to him three to four weeks after the accident. The original complaint and information, filed September 14, 1985, show that Appellant was not under arrest at that time. Further, the bail bond, filed September 20, 1985, lists Appellant's status as "non arrest." We conclude that Appellant's arrest must have been at some subsequent date, although

the record does not reveal an actual arrest date.

Delay for purposes of the Speedy Trial Act is measured from the time the defendant is arrested or the charging instrument which initiates the trial prosecution is filed. *Rios v. State*, 718 S.W.2d 730, 732 (Tex.Crim.App.1986); *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985); *Prescott v. State*, 696 S.W.2d 693, 695 (Tex. App.—Fort Worth 1985, pet. granted). Therefore, the appropriate date to begin computing the 90 day period is September 14, 1985, the date on which the first complaint and information were filed against Appellant.

The record reflects that the State announced ready on December 19, 1985. Resets were granted at defense request from September 27, 1985, to December 18, 1985. Continuances at the request or with the consent of the defendant or his counsel are excluded from the computation of the time by which the State must be ready for trial. Tex.Code Crim.Proc.Ann. art. 32A.02, § 4(3) (Vernon Supp.1987). Therefore, only thirteen days chargeable against the State had elapsed when the State first announced ready.

A declaration by the State that it is ready for trial is a prima facie showing of conformity with the Speedy Trial Act that the defendant may rebut with evidence demonstrating that the State was not actually ready for trial during the prescribed time period. *Mendoza v. State*, 636 S.W.2d 198, 201 (Tex.Crim.App.1982); *Barfield v. State*, 586 S.W.2d 538, 542 (Tex.Crim.App. 1979); *Mullen v. State*, 722 S.W.2d 808, 811 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Appellant attempts to rebut the State's announcement of ready by arguing that the original information contained a fatal error which precluded the State from proceeding to trial and that the announcement of ready did not carry over to the refiled cause under an information which had been amended to correct the error. Further, Appellant asserts that Tex.Code Crim.Proc.Ann. art. 28.10, as it existed at the time the original information was filed, prohibited the refiling of this case because the change in the information was one of substance. The first information alleged in its entirety that Appellant did:

while intoxicated, namely, not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body, drive and operate a motor vehicle in a public place.

It is further presented that in Harris County, Texas, KEITH TYRONE MOONE, hereafter styled the Defendant, heretofore on or about August 13, 1985, did then and there unlawfully while intoxicated, namely, having an alcohol concentration of at least 0.10 in his breath, drive and operate a motor vehicle in a public place.

It is further presented that as a direct result of the Defendant driving and operating his motor vehicle in a public place while intoxicated as hereinabove alleged, he did cause serious bodily injury to Nicole Lemone by colliding with the Complainant's vehicle.

The second information, filed April 25, 1986, was identical to the first except that "in his blood," in the first paragraph, was substituted for "in his breath," and the third paragraph was omitted. Even if these changes constituted substantive changes prohibited by art. 28.10, the defect in the original information is not sufficient to invalidate the information where the allegations of the first paragraph adequately allege the offense. Under art. 21.24(c), an information is sufficient if any one of its counts is sufficient. Tex.Code Crim.Proc. Ann. art. 21.24(c) (Vernon Supp.1987). The Speedy Trial Act does not require that the State be ready with a perfect indictment or information. *Ward v. State*, 659 S.W.2d 643, 647 (Tex.Crim.App.1983). Where a case is refiled under a new information for the same offense, the State's announcement of ready on the earlier information carries over and will be effective as an announcement of ready on the succeeding information. *Watson v. State*, 718 S.W.2d 892 (Tex.App.—Beaumont 1986, no pet.). *See Paris v. State* 668 S.W.2d 411, 412 (Tex.Crim.App.1984); *see also Rosebury v. State*, 659 S.W.2d 655 (Tex.Crim.App.1983).

The record reflects that in addition to the resets requested by Appellant from September 27, 1985, to December 18, 1985, the defendant also requested numerous other resets which caused the case to be continued from December 18, 1985, to May 9, 1986. The record further shows that when the State announced ready under the new cause number on May 9, 1986, the prosecutor declared that they had been ready for trial at all times since September 14, 1985. Appellant's trial commenced on June 24, 1986. When all excludable periods are deducted, we find that Appellant's trial actually began within sixty-two days after the action commenced. Appellant's third point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.